UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| BWP GAS, LLC | : | |
| Debtor | : | Bankruptcy No. 05-18754 |
| BWP GAS, LLC | : | |
| Plaintiff | | |
| v. | | |
| THE GHK COMPANY, LLC,<br>GHK/POTATO HILLS, L.P.,<br>BRIAN F. EGOLF, ROBERT S. MAY, and<br>ROBERT HEFNER | : | Adversary No. 05-0480 |
| Defendants | : | |

...................................................

MEMORANDUM

...................................................

Presently before me is the joint motion filed by all five defendants seeking abstention relief in the above-captioned adversary proceeding, as well as a recommendation for withdrawal of the reference and/or a remand or transfer of this lawsuit to state court: i.e., the District Court of Oklahoma County.  Their motion is opposed by the debtor.  Also pending is defendants' joint motion to dismiss debtor's amended complaint for failure to state a claim.  Other than agreeing to withdraw the intentional fraudulent conveyance claim, the debtor opposes dismissal as well.

After an evidentiary hearing concerning defendants' motion for abstention, withdrawal of the reference or transfer—that consisted solely of the submission of various documents and pleadings—the following facts were demonstrated.[1]

## I.

On March 4, 2004, GHK Company, LLC, GHK/Potato Hills, L.P. and Mr. Brian Egolf —three of the defendants in this adversary proceeding—commenced a civil action in Oklahoma state court against the debtor, BWP Gas, LLC, and two other defendants: Endeavour International Corp. and HBA Gas, Inc.  The civil action was docketed at CJ-2004-1868.  The complaint (styled a "verified petition" in Oklahoma state court) alleged that the three state-court plaintiffs and the debtor had entered into an "exploration agreement" in Oklahoma County on May 20, 2003.  This agreement purportedly involved drilling oil and gas wells located in Oklahoma.

The verified petition asserted that the state-court plaintiffs were entitled under this agreement to receive from BWP 2.5 million shares of common stock (plus a registration agreement) in the corporation known as Continental Southern Resources, Inc. ("CSOR"), upon the occurrence of certain conditions precedent.  (It was also alleged that defendant Endeavour was formerly known as CSOR.).  The state-court plaintiffs

---

[1]At my request, the parties produced all of the pleadings and orders filed in related litigation between them initially commenced in Oklahoma state court, and subsequently removed to federal district and bankruptcy courts in Oklahoma.  To the extent other documents were included, they were not considered, except for a declaration submitted by the Honorable Noma Gurich, who presided over the state court lawsuit.  Thus, the positions regarding various non-pleadings taken by the parties in letters submitted after the hearing were not germane to my considerations.

contended that all conditions precedent had occurred, and that the defendants had failed

to transfer the stock or the registration agreement.  It was also averred that BWP,

Endeavour and HBA were all alter-egos of each other and were jointly and severably

liable for the breach of contract.

The relief sought in this state court lawsuit included specific performance of

the contract, plus an injunction against the dilution, issuance, or transfer of CSOR stock.

A jury trial was demanded.

On April 6, 2004, BWP and HBA filed a joint notice of removal of the state

court litigation to the District Court for the Western District of Oklahoma, and the lawsuit

upon removal was docketed therein at CIV-04-0437.  Removal, pursuant to 28 U.S.C. §

1441, was purportedly based upon diversity of citizenship and that the amount in

controversy exceeded $75,000.

Thereafter, on April 13, 2004, defendants BWP and HBA filed an answer

opposing plaintiffs' removed state-court complaint, which answer was accompanied by

two counterclaims.  This pleading averred that BWP was a limited liability company

organized under Delaware law, with its principal place of business in Texas, and with a

business office in Pennsylvania.  HBA was a Delaware corporation that also had its

principal place of business in Texas and had a business office in Pennsylvania.

The counterclaims asserted that an exploration agreement was entered into

in February 2003, and concerned a working interest in a well identified as Mary #2-34,

located in Latimer County, Oklahoma and sometimes called the "Potato Hills Well."  The

first counterclaim alleged that the three plaintiffs had made fraudulent misrepresentations

in connection with the first exploration agreement, as well as in connection with a second

3

exploration agreement made in May 2003 (the latter serving as the basis for the initial

state-court complaint) for which damages in excess of $75,000 were sought.  The second

counterclaim was based upon purported negligent misrepresentations resulting in similar

monetary damages.  BWP and HBA also demanded a jury trial on their counterclaims.

Defendant Endeavour did not answer the plaintiffs' complaint in federal

court.  Instead, it filed a motion to dismiss the lawsuit due to a purported lack of personal

jurisdiction and a failure to state a claim against it.  Alternatively, it sought the transfer of

the lawsuit to the District Court for the Southern District of Texas pursuant to 28 U.S.C. §

1404.  Defendants BWP and HBA later joined Endeavour in seeking a change of venue.

The three state-court plaintiffs filed an answer in opposition to the

counterclaims, as well as a response opposing the motion to dismiss and the alternative

request for a transfer of the civil action.  The federal district court resolved some of those

matters in a memorandum and order dated August 25, 2004.  In essence, the court denied

the defendants' request to transfer the litigation to the Southern District of Texas, denied

Endeavour's motion to dismiss for failure to state a claim, and scheduled an evidentiary

hearing to consider the issue of personal jurisdiction over Endeavour.

On or about October 19, 2004, the three state-court plaintiffs filed a motion

to remand the litigation back to state court because of a lack of complete diversity of

citizenship.  On October 21, 2004, the District Court for the Western District of

Oklahoma agreed and remanded the lawsuit back to state court.  The order entered stated

that the federal court lacked jurisdiction under 28 U.S.C. § 1332.

Once the matter returned to state court, discovery, and various disputes concerning discovery, ensued.  Endeavour also filed, on December 8, 2004, another motion to dismiss for lack of in personam jurisdiction and for the failure to state a claim.

On January 25, 2005, the state court entered an order denying Endeavour's motion to dismiss the claims against it.  Thereupon, on February 9, 2005, Endeavour filed its answer along with a counterclaim to the plaintiffs' verified petition.  This counterclaim asserted that Endeavour was entitled to $2.5 million from the plaintiffs, based upon fraud committed in connection with the two exploration agreements.  The state-court plaintiffs then moved to dismiss the counterclaims filed by all three state-court  defendants, and later filed an answer thereto, and then amended that answer on May 10, 2005.

The state court issued orders on January 12, 2005 and June 15, 2005 resolving some discovery disputes. While these various claims, counterclaims, motions and unresolved discovery disputes were pending in state court, BWP and HBA filed voluntary petitions in bankruptcy under chapter 11 in the Eastern District of Pennsylvania, on June 27, 2005.  They immediately informed the state court of their bankruptcy filings.  The state-court plaintiffs, on July 13, 2005, sought to sever their claims against Endeavour and have only those determined in state court.  Indeed, on July 22, 2005, the plaintiffs filed a pleading voluntarily dismissing (without prejudice) their claims against the two debtors.  See In re Westwood Lumber, Inc., 932 F.2d 974 (Table), 1991 WL 71948 (9th Cir. 1991); Slay v. Living Centers East, Inc., 249 B.R. 807 (S.D.

Ala. 2000) (bankruptcy stay does not bar dismissal of claims against the debtor).[2]  As a result, there then remained pending in the state court the intial claims against Endeavour, as well as the counterclaims raised by BWP, HBA and Endeavour.  No claims were pending against BWP or HBA.

The maneuvering of these parties was not finished.  On July 25, 2005, the state court granted the plaintiffs leave to amend their complaint against Endeavour.  The amended verified petition sought the same relief—specific performance and an injunction—but also demanded costs and attorney's fees.  It also included new allegations of agency and third-party beneficiary status as concerned Endeavour.  On the same day, July 25, 2005, Endeavour filed a notice to remove the pending state court lawsuit against it to the District Court for the Western District of Oklahoma, pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452, contending that the litigation was related to the bankruptcy cases of BWP and HBA.

Upon return to the district court, this civil action was given a new docket number, CIV-05-846, and was assigned to the same district court judge who had remanded the earlier removed lawsuit to the state court.   The state-court plaintiffs, on August 4, 2005, filed a motion in the district court, requesting that the federal court not refer this removed litigation to the bankruptcy court (or to withdraw the reference from the bankruptcy court if such referral had already occurred).

---

[2]The parties in this court accept that the state-court claims against BWP and HBA were voluntarily dismissed at the direction of the state-court plaintiffs and without approval from the state court.  Presumably, then, Oklahoma state procedure has no rule comparable to Fed. R. Civ. P. 41(a).

Just prior to that motion, on July 26, 2005, debtor BWP filed the instant adversary proceeding in this forum.  In a pleading thereafter filed with the district court, Endeavour asserted that the "facts and transactions that form the basis of the claims in the [BWP's] Adversary Proceeding are the same as those that underlie the Debtors' State Court Counterclaims and the Endeavour Counterclaims."  Endeavour's "Motion for Referral [to the Bankruptcy Court for the Western District of Oklahoma] and Brief in Support Thereof" at ¶7 (July 29, 2005).   Later, Endeavour filed a separate motion to transfer venue of the removed civil action to the Bankruptcy Court for the Eastern District of Pennsylvania.  Both motions were opposed by the plaintiffs.

By order dated September 28, 2005, the District Court for the Western District of Oklahoma referred the removed civil action involving Endeavour and the former state-court plaintiffs to the Bankruptcy Court for the Western District of Oklahoma, where it remains pending.

In the meantime, on July 26, 2005, BWP and HBA removed their counterclaims against the three plaintiffs from the Oklahoma state court to the Bankruptcy Court for the Western District of Oklahoma, pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027.  The adversary proceeding was ultimately docketed at Adv. No. 05-1241NLJ.  These two debtor/parties then moved to transfer venue of that proceeding to this bankruptcy court.  The state-court plaintiffs, in turn, filed a motion to abstain or to remand the proceeding to state court.  The state-court plaintiffs also sought to have the Oklahoma bankruptcy court issue a recommendation to district court to withdraw the reference.  Those matters remain pending in the Bankruptcy Court for the Western District of Oklahoma.

7

Almost immediately after commencing the above-captioned adversary proceeding in this bankruptcy court, BWP filed an amended complaint.  The amended complaint names as defendants the three original state-court plaintiffs, plus Messrs. May and Hefner.  The latter two are alleged to be officers of GHK, LLC: the former is the chief financial officer and the latter is chief executive officer.

In its amended complaint, BWP alleges facts surrounding the two exploration agreements and the consideration it paid in connection thereto.  BWP also asserts that in June 2003 and sometime thereafter it obtained from the two GHK defendants interests in three additional wells: Lippincott #1-21; Shirley #1-20; and Indian #1-27.  These wells are also located in Oklahoma.

Averring fraud and misrepresentation, BWP raises eight claims against some or all of the defendants: intentional and constructive fraudulent transfers under state law, pursuant to 11 U.S.C. § 544; rescission due to fraud in connection with the two exploration agreements under state law; negligent misrepresentations under state law; conversion under state law; unjust enrichment under state law; constructive trust under state law; equitable accounting under state law; and turnover of interests in the three additional wells under 11 U.S.C. § 542.

To now summarize, at present there is an adversary proceeding involving BWP and five defendants pending in this court.  There also is pending a lawsuit involving three of the defendants and Endeavour that was commenced in state court and removed from Oklahoma state court to federal district court, remanded back to state court, removed a second time, and then referred to the Bankruptcy Court for the Western District of Oklahoma where it is pending.  And there is counterclaim litigation brought by

8

the debtor against three of the defendants, removed from state court to the district court,

remanded back to the state court, and then removed to the Bankruptcy Court for the

Western District of Oklahoma.  All three lawsuits involve the same facts, many of the

same claims and some of the same parties.

       BWP, HBA and Endeavour desire that all of the claims and lawsuits be

adjudicated in this bankruptcy court.  The defendants desire that all of the claims and

lawsuits be adjudicated either in Oklahoma state court or in a federal district court:

preferably the district court in Western Oklahoma, or alternatively, the district court in

Eastern Pennsylvania.

       I also note that the two lawsuits now pending in the Oklahoma bankruptcy

court involve jury trial demands.  BWP did not demand a jury trial in this adversary

proceeding, but it is likely—given the positions taken in the other _fora_—that the

defendants would demand trial by jury upon the filing of any answers.

II.

       Insofar as abstention, remand and withdrawal of the reference are

concerned, the defendants herein contend that the instant adversary proceeding is similar

to the litigation commenced in March 2004 in Oklahoma state court, wherein a number of

rulings were made involving discovery, personal jurisdiction and the pleading of claims

under Oklahoma law.  They further maintain that all eight claims raised by the debtor,

including the two that rely upon the Bankruptcy Code, are ultimately based upon

Oklahoma state law.  In addition, the defendants argue that BWP, as well as HBA and

9

Endeavour, have been actively involved in "forum shopping," conduct that defendants

assert should not be rewarded.  Accordingly, in the defendants' view, this proceeding is

ripe for permissive abstention or transfer back to state court.  Alternatively, the lawsuit

should be heard in district court, not in bankruptcy court.

The debtor/plaintiff, BWP, counters that the litigation in this forum is not

identical to the litigation pending in the Oklahoma bankruptcy court or that had been

pending in the Oklahoma state court.  BWP emphasizes that there are two "core" claims

raised in this proceeding—turnover and fraudulent conveyance—plus two additional

defendants and issues involving three additional wells: factors that render this proceeding

sufficiently distinct from former state court litigation brought in Oklahoma.[3]  Moreover,

while new defendant Hefner is a resident of Oklahoma, defendant May is alleged to be a

resident of Colorado.  Thus, BWP also contends that it could not obtain jurisdiction over

Mr. May, were this proceeding heard in Oklahoma.  Accordingly, BWP argues that the

adversary proceeding should be heard in this bankruptcy forum.

I turn first to defendants' issue of abstention and transfer under 28 U.S.C. §

1334(c).

A.

Bankruptcy adversary proceedings can be grouped into three categories for

purposes of determining subject matter jurisdiction under 28 U.S.C. § 1334.  In litigation

---

[3]As will be discussed below, however, the debtor also acknowledges that "the core
claims asserted in this Adversary Proceeding are factually intertwined with the related state law
claims asserted in this case."  Debtor's Objection to Defendants' Motion, ¶ 5(iv).

involving multiple claims or parties, the various claims must be analyzed for bankruptcy

jurisdictional purposes on a claim by claim basis.  Halper v. Halper, 164 F.3d 830, 837

(3d Cir. 1999) ("To determine the extent of the Bankruptcy Court's jurisdiction in this

case we must examine each of the five claims presented to ascertain if it is core, non-core,

or wholly unrelated to a bankruptcy case.").[4]

First, there are core proceedings, which may be heard and resolved by the

bankruptcy court via final judgment.  See 28 U.S.C. § 157(b)(1).  Core proceedings

represent those disputes so intertwined with the bankruptcy process that Congress has the

power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., a

bankruptcy judge) to render a final determination of their merits.  See 1 Norton

Bankruptcy Law and Practice 2d, § 4.26 at 4-154 (1999) ("The word 'core' was a

shorthand word employed to signify issues and actions that traditionally formed part of

the functions performed under federal bankruptcy law.").  Core proceedings represent a

subset of "related proceedings" in that they "arise under" or "arise in" the bankruptcy

case.

A proceeding is classified as core under 28 U.S.C. § 157 "if it invokes a

substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise

only in the context of a bankruptcy case."  In re Marcus Hook Development Park, Inc.,

943 F.2d 261, 267 (3d Cir. 1991) (quoting Beard v. Braunstein, 914 F.2d 434, 444 (3d

---

[4]In light of the Third Circuit's holding in Halper, 164 F.3d at 839 (disagreeing
with some of the same decisions relied upon the the debtor), I must reject the debtor's argument
that I should treat this adversary proceeding completely as a core proceeding because the core
claims allegedly predominate.  Debtor's Objection to Defendants' Motion, ¶ 37.  Indeed, as will
be discussed below, I need to consider the core and non-core claims separately for purposes of
the abstention analysis.  See In re Best Reception Systems, Inc., 220 B.R. 932 (Bankr. E.D. Tenn.
1998).

Cir. 1990) which, in turn, quoted Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)).

Thus, "[i]f the proceeding does not invoke a substantive right created by the federal

bankruptcy law and is one that could exist outside of bankruptcy it is not a core

proceeding. . . ." In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996).

   The second category of proceedings are referred to as non-core, related

proceedings.  A bankruptcy court may hear such proceedings, but may submit only

proposed findings of fact and conclusions of law to the district court for de novo review,

see U.S.C. § 157(c)(1), unless all parties agree that a final judgment may be entered in

bankruptcy court.  U.S.C. § 157(c)(2); see, e.g., Halper v. Halper, 164 F.3d at 836.  The

Third Circuit Court of Appeals has defined a non-core proceeding in the following

terms:

> Non-core proceedings include the broader universe of all
> proceedings that are not core proceedings but are
> nevertheless "related to" a bankruptcy case.  See 28 U.S.C. §
> 157(c)(1).  "[T]he test for determining whether a civil
> proceeding is related to bankruptcy is whether the outcome of
> that proceeding could conceivably have any effect on the
> estate being administered in bankruptcy."  Pacor v. Higgins,
> 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted); see In
> re Guild, 72 F.3d at 1180-81.  "[T]he proceeding need not
> necessarily be against the debtor or against the debtor's
> property."  In re Guild, 72 F.3d at 1180-81.  "'A key word in
> [this test] is conceivable.  Certainty, or even likelihood, is not
> a requirement.  Bankruptcy jurisdiction will exist so long as it
> is possible that a proceeding may impact on the debtor's
> rights, liabilities, options, or freedom of action or the
> handling and administration of the bankrupt estate.'"  Id. at
> 1181 (quoting In re Marcus Hook, 943 F.2d at 264)
> (emphasis omitted).

Halper v. Halper, 164 F.3d at 837 (footnote omitted).

   If a party demands a jury trial to determine a non-core proceeding, and if all

parties do not consent to the entry of a final judgment in bankruptcy court, then the

Seventh Amendment precludes de novo review of a jury verdict in the district court.

Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir. 1990) ("By the Seventh Amendment,

any fact found by a jury cannot be reviewed de novo.  Accordingly, a bankruptcy court

cannot conduct a jury trial in a non-core proceeding.")   If the proceeding remains in the

federal system, only the district court may preside over the jury trial and the reference

must be withdrawn from the bankruptcy court.  Id., at 447 (directing the district court "to

withdraw the reference of this adversary proceeding and to conduct a jury trial").

   Finally, the third category of proceedings are those which fall outside the

definition of non-core because their outcome would have no effect upon the bankruptcy

case.  The outcome of a dispute will not have any effect typically because it will not

affect the property to be administered in the bankruptcy case, the total assets to be

distributed, or the total claims to be paid.  Over these unrelated proceedings a bankruptcy

court has no subject matter jurisdiction.  See, e.g., Pacor, Inc. v. Higgins, 743 F.2d 984

(3d Cir. 1984).  One court has described unrelated bankruptcy proceedings in the

following way:

> Generally, bankruptcy courts lack jurisdiction to hear
> controversies between third parties which do not involve the
> debtor or property of the debtor, unless the court cannot
> perform its administrative duties without resolving the
> controversy. . . .  Three elements must be satisfied in order to
> divest the bankruptcy court of its jurisdiction: (1) the
> proceeding must involve non-debtor, third-parties, (2) the
> proceeding must not involve the property of the debtor, and
> (3) the proceeding must not involve a necessary
> administrative function.

Plaza at Latham Associates v. Citicorp North America, Inc., 150 B.R. 507, 512

(N.D.N.Y. 1993) (citations omitted).

Clearly, the debtor's claims against the five defendants seeking damages or the turnover of property are related to its chapter 11 bankruptcy case. The debtor's bankruptcy estate under section 541(a) includes all prepetition causes of action, see, e.g., In re Kollar, 176 F.3d 175, 178 (3d Cir. 1999), as well as all property interests the debtor held as of the commencement of the bankruptcy case. If the debtor's litigation against one or more defendants succeeds, the property available for distribution to its creditors could be increased. Therefore, all of the claims in this adversary proceeding could conceivably affect the amount of distribution to creditors and so fall within the related-to scope of bankruptcy court jurisdiction. See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56 (1989); see generally Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995).

The debtor maintains, however, that two of its claims should be classified as core matters: a subset of related jurisdiction. One is based upon section 542, which permits a trustee to demand turnover of estate property. Whether a debtor has an interest in property warranting turnover is, however, determined by state law. See, e.g., In re Kalter, 292 F.3d 1350, 1352-53 (11th Cir. 2002); In re Paletti, 242 B.R. 65, 66 (Bankr. M.D. Fla. 1999) ("[T]he inquiry in a turnover action requires a determination of what a debtor's legal and equitable interest in property, if any, is at the commencement of the case. This determination of property rights is a matter of state law.")

The debtor's other asserted core claim is based upon section 544(b), under which a bankruptcy trustee has the power to set aside a transfer of property as fraudulent under relevant state law, to the extent that a hypothetical unsecured creditor could do so. See, e.g., In re Hurtado, 342 F.3d 528, 531-32 (6th Cir. 2003); In re PWS Holding Corp., 303 F.3d 308, 314 (3d Cir. 2002). By virtue of section 1107(a), a chapter 11 debtor in

14

possession has the trustee's powers and thus the ability to raise claims under sections 542

and 544.  See, e.g., In re PWS Holding Corp., 303 F.3d at 314 ("In other words, § 544(b)

places the debtor in possession in the shoes of its creditors, giving it the right to

prosecute individual creditors' fraudulent transfer claims for the benefit of the

bankruptcy estate."); Matter of Richman, 104 F.3d 654, 657 n.1 (4th Cir. 1997) ("[P]rior

to conversion, the debtors were debtors-in-possession and held the powers of a trustee

including powers under 11 U.S.C. § 542 for turnover of property of the estate. 11 U.S.C.

§ 1107."); Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962, 965-66 (5th Cir.

1983) (same).

There is a tendency by chapter 11 debtors in possession to view the concept

of turnover under section 542 more broadly than Congress intended.  For example, some

chapter 11 debtors will plead as a turnover claim a lawsuit to collect an outstanding

prepetition receivable.   Section 542(b), however, should be construed as excluding from

its scope prepetition contract damage claims, such as claims for payments on outstanding

receivables, with one exception.  As one court explained:

> Ches-mont next contends that the Bankruptcy Court erred in
> concluding that the action to recover money from Willistown
> could not be maintained as a turnover action. The Code
> provides for the speedy turnover of property in which the
> debtor has a substantial interest. 11 U.S.C. § 542. Such
> property includes: (a) all property that the trustee may use, sell
> or lease, or that the debtor may exempt pursuant to 11 U.S.C.
> § 522, unless the property is of minimum value or benefit to
> the estate; (b) a debt that is property of the estate and is
> matured, payable on demand, or payable on order except to
> the extent that such debt may be offset under 11 U.S.C. § 533
> [sic]; (e) books, documents, records and any other papers that
> pertain to the debtor's property of financial affairs.
>
> Clearly subsections (a) and (e) do not apply to the money
> allegedly owed to Ches-mont. Whether the relief Ches-mont

seeks falls within the scope of subsection (b) requires a determination of whether Ches-mont's claim for turnover is one which is "matured, payable on demand, or payable on order." 11 U.S.C. § 542(b). Courts construing this subsection have concluded that to recover money from defendant, his liability must be undisputed. In re F.R.L. Company, Inc., 58 B.R. 632, 633 (Bkrtcy. E.D. Pa. 1985) ("Implicit in the bankruptcy concept of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes"). Liability is not undisputed unless there is "a final judgment from a court of competent jurisdiction or a stipulation by the defendant." In re Satelco, Inc. v. North American Publishers, Inc., 58 B.R. 781, 786 (Bkrtcy. N.D. Tex. 1986). See also In re Theobald Industries, Inc., 53 B.R. 506, 508 (Bkrtcy. D.N.J. 1984) ("Since the right to payment of the claims [asserted by the estate] is contingent on a judgment establishing liability, the claims are not 'matured').

Finally, Ches-mont contends that this action is really not contractual because it characterized and carried this account as an account receivable. This characterization, however, does not bring this action within the scope of § 542. "[A]ctions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by Section 542 and Section 157(b)(2)(E) absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability." Satelco at 789. . ..

Ches-Mont Utilities Const. Co., Inc. v. Willistown Woods Associates, 1992 WL 96335, at

*2 (E.D. Pa. Apr. 24, 1992) (citation omitted); see also Ohio v. Madeline Marie Nursing

Homes No. 1 and No. 2, 694 F.2d 449, 454 (6th Cir. 1982) (construing the former

Bankruptcy Act of 1898 and concluding that a valid turnover lawsuit requires a

determination that the defendant's claim to possession of property is pretextual).

   The Third Circuit Court of Appeals also considered this issue in Beard v.

Braunstein, 914 F.2d at 444, and instructed as follows:

Beard argues that this case falls into one of the specific
provisions, namely, section 157(b)(2)(E) orders to turn over
property of the estate. Such an action is limited to property in
the actual or constructive possession of the bankruptcy court.
Constructive possession

> exists where the property was in the physical
> possession of the debtor at the time of the filing
> of the petition in bankruptcy, but was not
> delivered by him to the trustee, where the
> property was delivered to the trustee, but was
> thereafter wrongfully withdrawn from his
> custody; where the property is in the hands of
> the bankrupt's agent or bailee; where the
> property is held by some other person who
> makes no claim to it; and where the property is
> held by one who makes a claim, but the claim is
> colorable only.

Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432-33 . . .
(1924).

While a chose in action is property of the estate, and the
bankruptcy court can determine who owns it, "the bankruptcy
court does not have summary jurisdiction to *enforce* a chose
in action against the bankrupt's obligor, even when the
bankrupt's rights seem clear." In re Lehigh and Hudson River
Ry. Co., 468 F.2d 430, 433 (2d Cir. 1972) (emphasis in
original). Though Lehigh and Hudson was decided under the
1898 law, the principle seems perfectly appropriate to
distinguish between a "core" turnover proceeding and a
"non-core" state-law contract action . . . .

As one leading treatise notes:

> The categorization of 'orders to turn over
> property of the estate' as core proceedings has
> misled some courts into expanding bankruptcy
> court jurisdiction beyond that permissible under
> Marathon. For example, it has been held that an
> action on matured promissory notes given
> pursuant to a stock purchase plan is a turnover
> proceeding under section 542 and is therefore a
> core proceeding. Similarly, an action to recover
> retentions on a construction contract has been
> held to be a turnover proceeding. The problem
> with these cases is that, under their rationale,
> every action brought by a trustee or debtor in
> possession to recover money or property could

17

conceivably be characterized as a turnover
proceeding, effectively eradicating <u>Marathon</u>.
1 Collier on Bankruptcy ¶ 3.01[2][b][iii] at 3-42-43 (15th ed.
1989).

In <u>Matter of Wood</u>, 825 F.2d 90 (5th Cir. 1987), the court
held that "a proceeding is core under section 157 if it invokes
a substantive right provided by title 11 or if it is a proceeding
that, by its nature, could arise only in the context of a
bankruptcy case." <u>Id.</u> at 97. This case does not meet this test,
since it is a garden variety contract claim and is not against
the bankruptcy estate.

In this proceeding, BWP alleges that defendants GHK, LLC and GHK, LP

control interests in three oil and gas wells that belong to the debtor. It demands the

"turnover" of those interests. Whether this claim represents merely a breach of contract

action against those two defendants or a true turnover action under section 542, I need not

now decide. For purposes of these motions, the defendants have agreed that this claim

represents a core matter. Defendants' Memorandum, at 2.

Courts have also held, and the defendants apparently agree, that fraudulent

conveyance claims raised under section 544(b) constitute core claims, even though they

incorporate state law. <u>See</u>, <u>e.g.</u>, <u>XL Sports, Ltd. v. Lawler</u>, 49 Fed. Appx. 13, 21 (6th Cir.

2002) (" Section 157(b)(2)(H) of Title 28 specifically provides that 'proceedings to . . .

avoid . . . fraudulent conveyances' are core proceedings. This includes not only

avoidance proceedings under § 548(a), but those under § 544(b) as well. . . . And

although the substantive law applied in the § 544(b) proceeding would be state law, the

claim still arises under title 11 because it is the bankruptcy code that transfers the cause of

action from the creditor to the trustee."); <u>In re Mankin</u>, 823 F.2d 1296, 1307 (9th Cir.

1987); <u>In re N. Parent, Inc.</u>, 221 B.R. 609, 627 (Bankr. D. Mass. 1998).

18

Accordingly, the classification of the eight claims raised by BWP in its amended complaint are as follows: count I for fraudulent conveyance under section 544, against GHK, LLC, GHK, LLP and Messrs Egolf and Hefner, is core; count II for fraudulent inducement and rescission under Oklahoma law, against GHK, LLC, GHK, LLP and Mr. Egolf, is non-core; count III for negligent misrepresentation under Oklahoma law, against all five defendants, is non-core; count IV for conversion under Oklahoma law, against all five defendants, is non-core; count V for unjust enrichment under Oklahoma law, against all five defendants, is non-core; count VI for turnover under section 542, against defendants GHK, LLC and GHK, LP, is core; count VII for constructive trust under Oklahoma law, against defendants GHK, LLC and GHK, LP, is non-core; and count VIII for equitable accounting under Oklahoma law, against defendants GHK, LLC and GHK, LP, is non-core.

B.

There are two types of abstention available in bankruptcy courts when an advesary proceeding is filed. The first to be considered is the mandatory abstention provision of 28 U.S.C. § 1334(c)(2). The second paragraph of the subsection states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

19

Under the terms of this statute, for mandatory abstention to apply the moving party bears the burden of persuasion, see In re Ascher, 128 B.R. 639, 644 (Bankr. N.D. Ill. 1991), to demonstrate the following elements: a timely motion to abstain; a proceeding based upon state law claims, with these claims being classified as non-core; no basis for federal court jurisdiction except for 28 U.S.C. § 1334; an appropriate civil action has been commenced in state court; and the likelihood that the pending state court action can be timely adjudicated.  See, e.g., In re Titan Energy, Inc., 837 F.2d 325, 333 n.14 (8th Cir. 1988); Barge v. Western Southern Life Ins. Co., 307 B.R. 541, 546 (S.D. W. Va. 2004); In re Pacor, Inc., 72 B.R. 927, 931 (Bankr. E.D. Pa. 1987), aff'd and recommendation approved, 86 B.R. 808 (E.D. Pa. 1987), appeal dismissed, No. 87-1408 (3d Cir. Jan. 27, 1988).

Here, the five defendants have made a timely motion to abstain.  While there are two core claims that are not amenable to mandatory abstention, there are also six claims raised by BWP that are non-core, and are based solely upon state law.  Those six claims are candidates for mandatory abstention.  See In re Best Reception Systems, Inc., 220 B.R. 932, 951 (Bankr. E.D. Tenn. 1998).  In light of the rulings of the district court in Oklahoma, there appears to be no source of federal court jurisdiction over these claims other than section 1334.

The defendants have sought to meet their burden to demonstrate that these non-core claims can be timely adjudicated in state court, see generally J.D. Marshall International, Inc. v. Redstart, Inc., 74 B.R. 651, 654 (N.D. Ill. 1987); In re Midgard Corp., 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997), by offering a declaration from the Honorable Noma Gurich from the District Court of Oklahoma County, who presided over

the state court litigation prior to its removal.  Judge Gurich declares that, were the

litigation returned to state court, and were the parties "agreeable and otherwise prepared

for trial," a jury trial on all the claims could be conducted within 60 to 90 days from the

final pretrial conference.  Defendants' Ex. Q.

Of course, there is no matter pending at present in state court.  The state

court counterclaims brought by BWP and HBA (and the claims involving Endeavour)

have been removed and presently are pending in the Bankruptcy Court for the Western

District of Oklahoma, where motions to remand those matters are under consideration.

Just recently, a judge of the District Court for the Eastern District of

Pennsylvania concluded that the removal of state court litigation does not preclude the

application of section 1334(c)(2).  See Allen v. J.K. Harris & Co., LLC, 331 B.R. 634,

639-40 (E.D. Pa. 2005).  Nonetheless, in the posture of the present litigation, I view the

application of mandatory abstention as problematic.

To the extent that the state court trial schedule depends upon both parties

notifying the court that they are fully prepared and ready for trial, as mentioned in Judge

Gurich's declaration, I cannot readily conclude, given the parties' extensive procedural

maneuvering, motions and discovery disputes, that they will so notify the state court in a

timely manner.  And the defendants have offered no evidence concerning local state

practice for the resolution of disputes where one party asserts that it needs more time to

prepare for trial.

Accordingly, I cannot conclude that the defendants met their evidentiary

burden to demonstrate that abstention would yield a timely disposition of this litigation in

state court.  See, e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. at 644; Borne v. New

21

Orleans Health Care, Inc., 116 B.R. 487, 494 (E.D. La. 1990); In re Nationwide Roofing

& Sheet Metal, Inc., 130 B.R. 768, 779 (Bankr. S.D. Ohio 1991).  I thus turn to

discretionary abstention under 28 U.S.C. § 1334(c)(1).

Subsection (c)(1) states: "Nothing in this section prevents a district court in

the interest of justice, or in the interest of comity with State courts or respect for State

law, from abstaining from hearing a particular proceeding arising under title 11 or arising

in or related to a case under title 11."

The non-specific language of the statute, its evolution, and the paucity of

legislative history has resulted in differing approaches toward permissive abstention of

bankruptcy proceedings.  See generally Block-Lieb, Permissive Bankruptcy Abstention,

76 Wash. U.  L.Q. 781 (Fall, 1998).  In this district, the consensus position involves

consideration of a non-exclusive list of factors:

> The following criteria guide the discretionary decision to
> abstain: (1) the effect on the efficient administration of the
> bankruptcy estate; (2) the extent to which state law issues
> predominate over bankruptcy issues; (3) the difficulty or
> unsettled nature of the applicable law; (4) the presence of
> related non-bankruptcy proceedings; (5) the basis of the
> bankruptcy court's jurisdiction over the claim; (6) the degree
> of relatedness or remoteness of the proceeding to the main
> bankruptcy case; (7) the substance rather than form of an
> asserted "core" proceeding; (8) the feasibility of severing state
> law claims from core bankruptcy matters to allow judgments
> to be entered in state court with enforcement left to the
> bankruptcy court; (9) the burden on the bankruptcy court's
> docket; (10) the likelihood that the commencement of the
> claim in bankruptcy court involves forum shopping; (11) the
> existence of the right to a jury trial; and (12) the presence in
> the proceeding of nondebtor parties.

Gilbert v. Ben Franklin Hotel Associates,1995 WL 598997, at *1 (E.D. Pa. 1995); see

also e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. at 645; In re Asousa Partnership, 276

B.R. 55, 74-75 (Bankr. E.D. Pa. 2002); see also Civic Center Cleaning Co. v. Reginella Corp., 140 B.R. 374, 375-76 (W.D. Pa. 1992); In re Laroche Industries, Inc., 312 B.R. 249, 253-54 (Bankr. D. Del. 2004); 1 Norton Bankr. Law & Practice 2d, § 4:39 (2004).

"Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993). Furthermore, whether permissive abstention is appropriate is committed to bankruptcy court discretion. See, e.g., Civic Center Cleaning Co., Inc. v. Reginella Corp., 140 B.R. at 375; In re Asousa Partnership, 276 B.R. at 75. Moreover, core claims as well as non-core claims are subject to permissive abstention. See, e.g., In re Best Reception Systems, Inc., 220 B.R. at 952.

In this proceeding, state law dominates all of the claims, even the ones classified as core. The relevant state law concerns contractual agreements involving ownership interests in oil and gas wells: an area better known to Oklahoma state court judges than to me. There is likely to be a jury demand by the defendants; moreover, given their past opposition to adjudication in bankruptcy court, the defendants are unlikely to consent to my presiding over that trial, thus necessitating withdrawal of the reference by the district court. See, e.g., Beard v. Braunstein. There is an unrelated dispute involving a non-debtor party, Endeavour, for which this court probably would have no subject matter jurisdiction to hear. Whether Endeavour must transfer stock interests to three defendants, or pay money to them, or recover money from them, would have no apparent effect upon this chapter 11 case.

23

Furthermore, the state court has already concluded that it has jurisdiction over Endeavour.  The state court has greater familiarity with the various claims posed in this litigation, as the matter was pending before it for some time and it had issued a number of preliminary rulings.[5]  Finally, given BWP's few tangible assets and the timing of this bankruptcy filing in relation to rulings from the state and district courts of Oklahoma, there is the likelihood that forum shopping played some part in BWP's chapter 11 filings in this district.[6]  These factors support permissive abstention.

A neutral factor is the effect of abstention on the administration of this bankruptcy case.  BWP discloses on its schedules its purported interests in the four Oklahoma oil and gas wells and its damage claims against GHK as its only material assets.  It also schedules no secured or priority debts, and its unsecured debts primarily consist of a disputed $6 million claim held by GHK,[7] and much smaller claims

---

[5]Indeed, there have been some rulings from the state court that, even though interlocutory, may be binding upon a federal court under the Rooker-Feldman doctrine.  See generally In re Knapper, 407 F.3d 573 (3d Cir. 2005); Port Authority Police Benevolent Association v. Port Authority Police Department, 973 F.2d 169, 177-78 (3d Cir. 1992).

[6]The bankruptcy filing occurred more than one year after the debtor was sued in Oklahoma, thus the existence of that lawsuit was not likely the triggering event for this chapter 11 petition.  The bankruptcy was filed after the district court remanded the matter and after the state court issued various rulings.  The debtor stated in its earlier counterclaim that its principal place of business was in Texas, not Pennsylvania.  And, the claims raised in this proceeding represent virtually all of BWP's assets.  The only tangible property scheduled by BWP, other than its alleged interest in the four oil and gas wells, is a bank account in the amount of $9,248.00.  This bankruptcy filing does not appear to have been undertaken to protect assets from execution, nor even to reduce the costs of litigation.  Presumably, those costs would be the same whichever forum determines the debtor's claims against GHK.

[7]As noted earlier, GHK withdrew its claims against BWP in state court without prejudice.

aggregating about $500,000.  Given its limited tangible assets there is unlikely to be any

chapter 11 reorganization until BWP's claims against the defendants are quantified.

　　　　　All confirmed plans must be feasible.  11 U.S.C. § 1129(a)(11).  While the

concept of feasibility does not require that substantial consummation of the plan be

guaranteed, nonetheless, the plan proponent must demonstrate that there be a reasonable

assurance of compliance with plan terms.  See, e.g., In re Danny Thomas Properties II

Ltd. Partnership, 241 F.3d 959, 962 (8th Cir. 2001); Matter of T-H New Orleans Ltd.

Partnership, 116 F.3d 790, 801 (5th Cir. 1997); In re Orlando Investors, L.P., 103 B.R.

593, 600-01 (Bankr. E.D.Pa. 1989).

　　　　　Any chapter 11 plan proposed by BWP would depend upon the successful

recovery of proceeds or property from GHK (or the other defendants).  While it would be

inappropriate (and not possible) for me in this context to opine as to the likelihood and

amount of the debtor's recovery, any such recovery at this point must be regarded as

speculative.  Given that these claims appear to be the only source of plan funding,

confirmation of any such plan would be unlikely until the probable outcome of the

litigation could be determined.  See, e.g., In re Ames, 973 F.2d 849, 851 (10th Cir. 1992),

cert. denied, 507 U.S. 912 (1993) ("Because of the speculative nature of the debtors'

potential litigation against the Bank, the bankruptcy court did not err in declining to

confirm this plan"); In re Thompson, 1995 WL 358135, at *3 (E.D. Pa. 1995); In re

Cherry, 84 B.R. 134, 138-39 (Bankr. N.D. Ill. 1988).

　　　　　There can be no successful chapter 11 reorganization without some

determination of BWP's claims, and those claims cannot be determined in this forum

because of the non-core nature of many of the claims and the defendants' likely jury

25

demands. Thus, the litigation will proceed either in state court or in district court. Although the defendants did not meet their burden to establish that there would be "a timely adjudication" in state court for purposes of mandatory abstention, there is no evidence to conclude, in light of the state court's familiarity with the litigation, that this lawsuit would be determined more promptly in federal district court.

Thus, abstention is unlikely to have any material effect on the administration of this chapter 11 case.

Those factors that support abstention outweigh those counseling against abstention: whether the debtor can obtain personal jurisdiction over GHK, LLC's chief financial officer; whether there are two claims considered core proceedings; whether there is a dispute involving more oil and gas wells than initially raised by the debtor in its state-court counterclaim; and whether the federal district court (since a jury demand would preclude a resolution in this forum) might possibly adjudicate these claims more quickly than a state court forum.

Accordingly, I conclude that it is the better exercise of discretion to permissively abstention from all of the debtor's claims against all the defendants, pursuant to 28 U.S.C. § 1334(c)(1).

C.

Generally, when a bankruptcy court concludes that abstention is the appropriate remedy, the proceeding will be dismissed, albeit without prejudice. <u>See</u>, <u>e.g.</u>, <u>In re North Lily Mining Co.</u>, 289 B.R. 1 (Bankr. D. Colo. 2002); <u>In re Mid-City Ventures</u>,

26

1992 WL 37481, at *6 (Bankr. W.D. Tenn. 1992).  Just recently, however, a district court

judge, relying upon In re Midgard Corp., 204 B.R. 764,774 (B.A.P. 10th Cir. 1997),[8] held

that permissive abstention under section 1334(c)(1) affords a bankruptcy court the power

to transfer a proceeding to a state court that had some prior connection to the litigation.

Allen v. J.K. Harris & Co., LLC, 331 B.R. at 639 ("[B]ecause Section 1334(c)(2) itself

neither supports nor rejects the supposition that abstention requires a stay or dismissal, a

federal court would not be prohibited from remanding a case to state court were it to find

abstention necessary.").  Indeed, in Allen, the district court determined that discretionary

abstention was warranted and remanded the proceeding to state court.

　　　　　In this proceeding, I am reluctant to simply dismiss the matter, due to a

concern that the statute of limitations may have run on some of the claims asserted by the

debtor against certain defendants.  The federal district court in Western Oklahoma has

referred the litigation to the bankruptcy court in that district; thus, it would be

inappropriate to transfer this proceeding to that federal district court under 28 U.S.C.

1631.  And having just concluded that this bankruptcy court should abstain, it would be

inconsistent to transfer the venue of this proceeding to the Oklahoma bankruptcy court.

　　　　　Therefore, while I appreciate that the litigation removed from the Oklahoma

state court is not identical to this adversary proceeding, the fairest remedy to all parties is

to utilize my equitable powers under abstention and transfer this lawsuit to the District

Court of Oklahoma County.  The defendants have requested this relief, so they cannot

complain.  And if the debtor believes that dismissal is more appropriate, apparently it may

---

[8]The Midgard court, in turn, relied upon Quackenbush v. Allstate Ins. Co., 517
U.S. 706 (1996), in concluding that a federal court may remand a matter if abstention is
appropriate.  Id., 204 B.R. at 774 n.12.

elect that remedy in state court by dismissing its claims without prejudice.  Moreover, as

no party has raised any claims against this debtor, my transfer to state court will not

implicate the bankruptcy stay.  See generally Maritime Elec. Co., Inc. v. United Jersey

Bank, 959 F.2d 1194 (3d Cir. 1991).

An appropriate order shall be entered.[9]

---

[9]In light of this ruling, I shall not address defendants' motion to dismiss this
adversary proceeding, nor consider whether I should recommend to the district court that it
withdraw the reference.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :      Chapter 11

BWP GAS, LLC                                 :

                        Debtor               :      Bankruptcy No. 05-18754
_____

BWP GAS, LLC                                 :

                    Plaintiff                :
            v.

THE GHK COMPANY, LLC,                        :
GHK/POTATO HILLS, L.P.,
BRIAN F. EGOLF, ROBERT S. MAY, and :
ROBERT HEFNER                                       Adversary No. 05-0480
                                             :
                    Defendants
_____

.................................................

ORDER

.................................................

AND NOW, this 2nd day of December 2005, for the reasons stated in the
accompanying memorandum, it is hereby ordered that defendants' motion to abstain is
granted pursuant to 28 U.S.C. § 1334(c)(1).  It is further ordered that this adversary
proceeding is transferred to the District Court of Oklahoma County.  The clerk of court
shall transfer this proceeding to the District Court of Oklahoma County forthwith, and
note that it is related to former Case No. CJ-2004-1868.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Allen B. Dubroff, Esq.
7848 Old York Road
Suite 200
Elkins Park, PA 19027

Howard Gershman, Esq.
Flamm Boroff & Bacine, P.C.
794 Penllyn Pike
Blue Bell, PA 19422

Kevin Callahan, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

Honorable Noma Gurich
Oklahoma County Courthouse
321 Park Avenue, Rm. 359
Oklahoma City, OK 73102

Honorable Niles. L. Jackson
United States Bankruptcy Court for the Western District of Oklahoma
215 Dean A McGee Ave. , 2nd Floor
Oklahoma City, OK 73102