UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| BWP GAS, LLC | : | |
| Debtor | : | Bankruptcy No. 05-18754bif |

| | | |
|---|---|---|
| BWP GAS, LLC | : | |
| Plaintiff | : | |
| v. | : | |
| THE GHK COMPANY, LLC, GHK/POTATO HILLS, L.P., BRIAN F. EGOLF, ROBERT S. MAY, and ROBERT HEFNER | : | Adversary No. 05-0480 |
| Defendants | : | |

..................................................

MEMORANDUM

..................................................

Presently before me, on remand from the District Court for the Eastern

District of Pennsylvania, is the joint motion filed by all five defendants seeking abstention

relief in the above-captioned adversary proceeding.  By prior order I granted defendants'

motion based upon discretionary abstention, and transferred this proceeding to the District

Court of Oklahoma County—a state court that had previously served as a forum for a

related dispute among these parties.  However, when determining plaintiff's appeal from

my abstention and transfer order, District Judge Brody held that my decision to transfer

this proceeding to Oklahoma state court was improper, and remanded defendants' motion

to this bankruptcy court to determine whether, in light of my inability to transfer this

proceeding to state court, I would still afford the defendants' discretionary abstention relief and, if so, what type of relief.

I recently heard oral argument from the various parties. The defendants contend that abstention is still appropriate for the reasons I previously detailed, and that dismissal is the appropriate remedy. Moreover, they maintain that, as an added basis for abstaining in this adversary proceeding, I have dismissed the underlying chapter 11 bankruptcy case therefore there is no justification to retain jurisdiction over this litigation. See generally In re Smith, 866 F.2d 576, 580 (3d Cir. 1989) (dismissal of the bankruptcy case will usually result in the dismissal of pending adversary proceedings).

The plaintiff, BWP Gas, LLC ("BWP") counters that my original analysis regarding abstention was flawed. Moreover, it notes that there is pending an appeal from the dismissal order with the District Court so that the question of retaining jurisdiction may be premature. In addition, the plaintiff observes that, prior to dismissal, some of the defendants filed a proof of claim in this chapter 11 case, to which BWP filed a counterclaim, raising many of the same issues as in this proceeding.

BWP argues that I should take no action concerning the remand of this abstention motion until the District Court rules on the appeal of the dismissal order. Were the dismissal of the chapter 11 case reversed, the plaintiff contends, the abstention analysis may be affected by the proof of claim litigation. Alternatively, BWP requests that I deny abstention and permit this proceeding to be adjudicated in this forum.

Insofar as the plaintiff contends that I await further action from the District Court before resolving the abstention issue, I must decline. Had District Judge Brody so desired, either she would have decided the dismissal appeal first, or she would have so

2

instructed with her remand order.  Indeed, it is quite possible that the District Court is

awaiting my ruling on abstention before considering the debtor's appeal of my earlier

dismissal order, because the abstention decision may affect the dismissal analysis.

Accordingly, I will address the abstention motion as posed by the defendants.

As I did with my prior abstention decision, I requested that the parties

provide me with all of the pleadings and orders involving these parties and issued by the

Oklahoma state, district and bankruptcy courts since my earlier abstention decision.  They

have kindly done so, including an order from the District Court for the Western District of

Oklahoma, dated February 8, 2007.

The following abstention analysis will recount the litigation between these

parties in various Oklahoma fora, as well as summarize undisputed facts adduced during a

hearing concerning dismissal of the underlying bankruptcy case, reported in a

Memorandum Opinion dated June 19, 2006.  I shall then discuss this adversary

proceeding and note any overlaps to litigation presently pending elsewhere.  Finally, I

shall apply the factors typically considered by courts when considering abstention under

28 U.S.C. § 1334(c).  This analysis leads me to conclude that discretionary abstention is

still appropriate and dismissal of this proceeding is warranted.

I.


A.


BWP Gas, LLC, the former debtor, is a limited liability company that was established solely to invest in oil and gas interests with GHK, LLC ("GHK") in 2003. At the time of its bankruptcy filing, it had no assets (other than a modest bank account approximating $9,250) but for its alleged interests in certain oil and gas wells in Oklahoma, the rights to which are in dispute to be described below. Those interests were valued on the debtor's bankruptcy schedules as worth $1.6 million.[1]

BWP as a limited liability company has only two membership interests. One such interest is held by Oklahoma Hills Gas, LLC for 1%, while CSOR Preferred Liquidation, LLC ("CSOR") holds the second interest for 99%. Mr. Ernest Bartlett is the managing member of BWP; he lives and works in Little Rock, Arkansas.

The majority owner of the debtor, CSOR, is in turn owned by 11 entities all with connections to Mr. Bartlett, Mr. Howard M. Appel or Mr. Stephen Harrington. Mr. Appel is president of 1025 Investments, Inc., which owns 18.61% of CSOR; Mr. Bartlett is the president of FEQ Investments, Inc. (owned by GWR Trust, a trust for the benefit of

---

[1]Without explanation, Mr. Appel testified at the dismissal hearing that the debtor's interests were worth $2.5 million. This different valuation is not material to my abstention analysis.

Mr. Bartlett's children), which is the managing member of and owns 34.51% of CSOR,[2] and Mr. Harrington is president of SPH Investments, Inc., a 24.19% member of CSOR.[3]

At the earlier dismissal hearing, BWP asserted that its principal place of business is an office suite located in Bala Cynwyd, Pennsylvania.[4]  These offices play host to approximately 25 entities.  In many of those entities, Mr. Appel is an officer, director, or managing member.[5]  On the outside door of this suite of offices is the name "HMA Advisors."

BWP has no employees; rather it pays consultants to provide needed services, such as legal and accounting services.  At least some of these consultants are located in or near Philadelphia, Pennsylvania, including the Bala Cynwyd suite. Furthermore, BWP has no rent or utility expenses.

In this former bankruptcy case, BWP listed defendant GHK as a disputed, unsecured creditor with a claim of $6 million on Schedule F of its bankruptcy schedules. Sixteen other unsecured creditors were scheduled in the total amount of $900,000.  Half of the scheduled creditors were purported to have advanced loans to BWP in the total amount of $636,500.  The other creditors provided legal or accounting services totaling $271,515.  No creditor besides GHK was scheduled as holding a disputed, contingent or

---

[2]He is also the president of HBA Gas, which is the manager of Oklahoma Hills Gas, LLC, the 1% owner of BWP.

[3]He is also president and managing member of Continental Southern Resources, Inc. (n/k/a Endeavor International Corp.).

[4]As will be noted later, in pleadings filed in Oklahoma, BWP asserted that its principal place of business was in Texas.

[5]For example, 1025 Investments, 1025 Partners, CSOR Preferred Liquidation, LLC, IL Resources and SPH Investments have offices at the same address.

unliquidated claim.  At the dismissal hearing, the debtor acknowledged that none of the

lender/creditors was pressuring BWP for payment when it filed for bankruptcy relief.

(This lack of creditor pressure was probably due to the relationship of every lender to

Messrs. Appel, Bartlett or Harrington.)  Of the eight creditors who have no connection

with those three individuals, six provided legal services related to pre-bankruptcy

litigation with GHK.  The two accounting services creditors were owed only $28,000.

BWP's pre-bankruptcy dealings with GHK arose as follows.

In February 2003, May 2003 and June 6, 2003, BWP, GHK and

GHK/Potato Hills Limited Partnership ("GHK LP") entered into a series of agreements

that would purportedly provide the BWP with a small (5% to 8.5%) working interest in

certain oil and gas wells—referred to as Mary #2-24, Lippincott #1-21; Shirley #1-20;

and Indian #1-27—at a cost of more than $6 million, plus stock in Endeavour

International Corp.  The Mary well was the subject of the first two agreements.  The three

additional wells were the subject of the June 2003 contract.

BWP asserts that it paid $2.5 million of the sum owed in connection with

the Mary well in April 2003, and failed to pay the balance due to fraud and

misrepresentations committed by GHK and an entity known as North American Natural

Gas, Inc. ("NANG"), as well as certain individuals connected to those entities.

Prior to its bankruptcy filing, BWP received modest dividends from its

interest in one or more of these oil and gas wells totaling $27,305 in 2003 and $37,484 in

2004.  In May 2003, GHK notified BWP that the latter no longer held an interest in the

Mary well and had forfeited the $2.5 million paid.  This led to the May 19, 2003

6

agreement, whereby BWP sought to restore its interest in that well.  This second

agreement ultimately did not resolve the parties' dispute.

Various lawsuits then commenced between these parties, initially involving

the Mary well, based upon the February and May 2003 exploration contracts, and later

involving the three additional wells identified in the June 2003 "Indian exploration"

agreement.  My review of the numerous pleadings and orders provided by the parties

reflects that the following occurred in this forum and in federal and state courts in

Oklahoma, both before and after BWP filed this petition.


B.


The first lawsuit involving these parties began on March 4, 2004, when

GHK, GHK L.P. and Mr. Brian Egolf—three of the defendants in this adversary

proceeding—commenced a civil action in Oklahoma state court against BWP and two

other defendants: Endeavour International Corp. and HBA Gas, Inc.  The complaint

(styled a "verified petition" in Oklahoma state court) alleged that the three state-court

plaintiffs and BWP had entered into an exploration agreement in Oklahoma County on

May 20, 2003 (the second Mary well agreement).

The verified petition asserted that the state-court plaintiffs were entitled

under this agreement to receive from BWP 2.5 million shares of common stock (plus a

registration agreement) in the corporation known as Continental Southern Resources, Inc.

upon the occurrence of certain conditions precedent.  (It was also alleged that defendant

Endeavour was formerly known as that entity.)  The state-court plaintiffs contended that

7

all conditions precedent had occurred, but that the defendants had failed to transfer the

stock or the registration agreement.  It was also averred that BWP, Endeavour and HBA

were all alter-egos of each other and were jointly and severally liable for the breach of

contract.  The relief sought in this state court lawsuit included specific performance of the

contract, and an injunction against the dilution, issuance, or transfer of Endeavour stock.

A jury trial was demanded.

On April 6, 2004, BWP and HBA filed a joint notice of removal of the state

court litigation to the District Court for the Western District of Oklahoma.  Removal,

pursuant to 28 U.S.C. § 1441, was purportedly based upon diversity of citizenship and

that the amount in controversy exceeded $75,000.

The state court lawsuit was removed and docketed in district court.

Thereupon, on April 13, 2004, defendants BWP and HBA filed an answer contesting

plaintiffs' removed state-court complaint, which answer was accompanied by two

counterclaims.  This pleading averred that BWP was a limited liability company

organized under Delaware law, with its principal place of business in Texas and a

business office in Pennsylvania.  HBA was a Delaware corporation that also had its

principal place of business in Texas and a business office in Pennsylvania.

The counterclaims asserted that an exploration agreement was entered into

in February 2003, and concerned a working interest in a well identified as Mary #2-34,

located in Latimer County, Oklahoma (and sometimes called the "Potato Hills Well").

The state-court defendants' initial counterclaim alleged that the three plaintiffs had made

fraudulent misrepresentations in connection with the first exploration agreement, as well

as in connection with a second exploration agreement made in May 2003 for which

8

damages in excess of $75,000 were sought. The second counterclaim was based upon purported negligent misrepresentations resulting in similar monetary damages. BWP and HBA also demanded a jury trial on their counterclaims.

Defendant Endeavour did not answer the plaintiffs' complaint in federal court. Instead, it filed a motion to dismiss the lawsuit due to a purported lack of personal jurisdiction and a failure to state a claim against it. Alternatively, it sought the transfer of the lawsuit to the District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404. Defendants BWP and HBA later joined Endeavour in seeking a change of venue.

The three state-court plaintiffs filed an answer in opposition to the counterclaims, as well as a response opposing the motion to dismiss and the alternative request for a venue transfer of the civil action. The federal district court resolved some of those matters in a memorandum and order dated August 25, 2004, denying the defendants' request to transfer the litigation to the Southern District of Texas and denying Endeavour's motion to dismiss for failure to state a claim.

On or about October 19, 2004, the three state-court plaintiffs filed a motion to remand the litigation back to state court because of a lack of complete diversity of citizenship. On October 21, 2004, the District Court for the Western District of Oklahoma agreed and remanded the lawsuit back to state court. The order entered stated that the federal court lacked jurisdiction under 28 U.S.C. § 1332.

Once the litigation returned to Oklahoma state court, discovery, and various disputes concerning discovery, ensued. Endeavour also filed, on December 8, 2004, another motion to dismiss for lack of in personam jurisdiction and for the failure to state a claim. On January 25, 2005, the state court entered an order denying Endeavour's motion

9

to dismiss the claims against it.  Thereupon, on February 9, 2005, Endeavour filed its answer along with a counterclaim to the plaintiffs' verified petition.  This counterclaim asserted that Endeavour was entitled to $2.5 million from the plaintiffs, based upon fraud committed in connection with the first two exploration agreements.  The state-court plaintiffs then moved to dismiss the counterclaims filed by all three state-court defendants.

The state court issued orders on January 12, 2005 and June 15, 2005 resolving some discovery disputes.  GHK sent BWP a letter dated April 5, 2005 purporting to terminate BWP's interests in the June 2003 exploration agreement.  On June 17, 2005, BWP was served with a notice of deposition to take place on June 28, 2005.[6] While these various claims, counterclaims, motions and unresolved discovery disputes were pending in state court and just prior to its deposition, BWP (and HBA) filed voluntary petitions in bankruptcy under chapter 11 in the Eastern District of Pennsylvania, on June 27, 2005.[7]  They immediately informed the state court of their bankruptcy filings.  The state-court plaintiffs, on July 13, 2005, sought to sever their claims against Endeavour and have the Endeavour claims determined in state court. Indeed, on July 22, 2005, the plaintiffs filed a pleading voluntarily dismissing (without prejudice) their claims against the two debtors.

Thus on July 22, 2005, shortly after BWP's bankruptcy filing, there remained pending in the state court the initial claims against Endeavour as well as the

---

[6] See Exhibit O to defendants' motion to abstain.

[7] HBA Gas, Inc.'s bankruptcy case was dismissed on March 8, 2006, without opposition from any party.

10

counterclaims raised by BWP, HBA and Endeavour against the three state-court

plaintiffs.  No claims were then pending against BWP or HBA.

On July 25, 2005, the state court granted the plaintiffs leave to amend their

complaint against Endeavour.[8]  On the same day, July 25, 2005, Endeavour filed a notice

to remove the pending state court lawsuit against it to the District Court for the Western

District of Oklahoma, pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452,

contending that the litigation was related to the then pending bankruptcy cases of BWP

and HBA.  Upon return to the district court, this civil action was given a new docket

number and was assigned to the same district court judge who had remanded the earlier-

removed lawsuit to the state court.

Immediately following that removal, on July 26, 2005, BWP filed the

instant adversary proceeding in this forum.  In a pleading thereafter filed with the district

court, Endeavour asserted that the "facts and transactions that form the basis of the claims

in the [BWP's] Adversary Proceeding are the same as those that underlie the Debtors'

State Court Counterclaims and the Endeavour Counterclaims."  <u>See</u> Endeavour's "Motion

for Referral [to the Bankruptcy Court for the Western District of Oklahoma] and Brief in

Support Thereof" at ¶ 7 (July 29, 2005).[9]

--------

[8]The amended verified petition sought the same relief—specific performance and
an injunction—but also demanded costs and attorney's fees.  It also included new allegations of
agency and third-party beneficiary status as concerned Endeavour.

[9]Endeavour would later also file a motion with the District Court for the Western
District of Oklahoma to transfer venue of the removed civil action to the Bankruptcy Court for
the Eastern District of Pennsylvania.  This was opposed by the plaintiffs and never granted by the
district court.

Also on July 26, 2005 (the day that the above-captioned adversary

proceeding was filed in this court), BWP and HBA removed their pending counterclaims

against the three state-court plaintiffs from the Oklahoma state court to the Bankruptcy

Court for the Western District of Oklahoma, pursuant to 28 U.S.C. § 1452(a) and Fed. R.

Bankr. P. 9027.  These two debtor/parties then moved to transfer venue of that removed

state-court litigation from the Oklahoma bankruptcy court to this Pennsylvania

bankruptcy court.  The state-court plaintiffs, in turn, filed a motion with the Bankruptcy

Court for the Western District of Oklahoma to abstain or to remand the proceeding to

state court.  The state-court plaintiffs also sought to have the Oklahoma bankruptcy court

issue a recommendation to the district court to withdraw the reference.

On July 28, 2005, the BWP and HBA filed a motion in the Bankruptcy

Court for the Western District of Oklahoma seeking to amend their pending

counterclaims and add various counterclaim defendants.  The two additional proposed

counterclaims concerned federal securities laws.  The proposed additional defendants

were Messrs. May and Hefner (defendants in this adversary proceeding), and North

American National Gas, Inc.  In their motion to amend, BWP averred that "the facts

alleged as the basis for the claims made in the Adversary Proceeding [filed in Bankruptcy

Court for the Eastern District of Pennsylvania] are inextricably intertwined with and

largely the same as the facts underlying the counterclaims asserted in this action."  (July

28, 2005 Motion, ¶ 6.)[10]

---

[10]In its proposed pleading to amend its counterclaims filed after this bankruptcy
case commenced, BWP still asserted that its principal place of business was in Texas and that
Pennsylvania hosts its business office.

12

Almost immediately after commencing the above-captioned adversary proceeding in this bankruptcy court, BWP filed an amended complaint in this court. The amended complaint named as defendants the three original state-court plaintiffs, plus Messrs. May and Hefner. The latter two are alleged to be officers of GHK, LLC: the former is the chief financial officer and the latter is chief executive officer.

In its amended complaint, BWP alleges facts surrounding the two Mary well exploration agreements and the consideration it paid in connection thereto. BWP also raises claims involving its June 2003 contract concerning interests in the three additional Oklahoma oil and gas wells: Lippincott #1-21; Shirley #1-20; and Indian #1-27.

Averring fraud and misrepresentation, BWP raised eight claims against some or all of the defendants: intentional and constructive fraudulent transfers under state law, pursuant to 11 U.S.C. § 544; rescission due to fraud in connection with the two Mary well exploration agreements under state law; negligent misrepresentations under state law; conversion under state law; unjust enrichment under state law; constructive trust under state law; equitable accounting under state law; and turnover of interests in the three additional wells under 11 U.S.C. § 542.

By order dated September 28, 2005, the District Court for the Western District of Oklahoma referred the removed civil action involving BWP, HBA, Endeavour and the former state-court plaintiffs to the Bankruptcy Court for the Western District of Oklahoma. At this point, there was similar litigation involving these parties both in this bankruptcy court and in the Oklahoma bankruptcy court.

13

On December 2, 2005, I entered an order granting discretionary abstention and transferring this adversary proceeding to the Oklahoma state court.  BWP took a timely appeal from that order.

 On February 23, 2006, the three original state-court plaintiffs and Endeavour filed a joint stipulation in the Bankruptcy Court for the Western District of Oklahoma stating that they had settled their claims and counterclaims and stipulating to their dismissal, which stipulation was approved by that bankruptcy court on February 28, 2006.  Thus, there are no claims pending against or for Endeavour that are related to this adversary proceeding.

On June 19, 2006, I dismissed BWP's chapter 11 bankruptcy case, for reasons detailed in a lengthy memorandum.  A timely appeal from that dismissal order was taken and the appeal is still pending.

On July 18, 2006, the three state-court plaintiffs filed a motion in the Bankruptcy Court for the Western District of Oklahoma, requesting that it recommend to the District Court for the Western District of Oklahoma that pending litigation among GHK, BWP and others either be dismissed or the reference withdrawn by the district court pursuant to 28 U.S.C. § 157(d).  BWP and HBA opposed this requested relief.

The Bankruptcy Court for the Western District of Oklahoma then recommended, on September 11, 2006, that the reference be withdrawn by the district court and the litigation either be dismissed or remanded to state court.  The District Court for the Western District of Oklahoma accepted this recommendation in part on September 21, 2006, and withdrew the reference.  It further stated that "once the matter has been transmitted to this Court, the issue of remand to the District Court of Oklahoma County

14

. . . will be addressed."

Thereupon, on October 12, 2006, the state-court plaintiffs requested that the District Court for the Western District of Oklahoma remand the litigation back to the Oklahoma state court. BWP and HBA opposed such relief, asserting that the District Court should either retain jurisdiction, transfer the litigation to the Bankruptcy Court for the Eastern District of Pennsylvania, or stay any ruling pending a decision by the District Court for the Eastern District of Pennsylvania concerning dismissal of BWP's bankruptcy case.

That remand issue was just decided by an order dated February 8, 2007. The District Court for the Western District of Oklahoma remanded the civil action involving BWP, GHK and others to the District Court for Oklahoma County. Presumably, now pending in state court is BWP's and HBA's motion to amend their counterclaims and add counterclaim defendants.

In addition, while they were contesting matters in the Oklahoma federal courts, on June 21, 2006, the three original state-court plaintiffs filed a second amended complaint (i.e., an amended verified petition) against BWP and HBA in Oklahoma state court, having been given state court leave to do so. This second amended complaint asserted that the defendants breached the May 20, 2003 contract to transfer stock in Endeavour, for which specific performance and damages were sought. The plaintiffs also sought a declaration that the defendants had no interests under the June 6, 2003 agreement concerning the three non-Mary wells (referred to as the "Indian Exploration Agreement"). A jury trial demand was made.

15

BWP and HBA then moved to dismiss this amended state court petition, alleging that the Oklahoma state court had no jurisdiction to hear it, as all state court litigation had been removed and was still pending in federal courts.  The state-court plaintiffs have opposed dismissal and that motion is still pending.

To recap, presently there is an adversary proceeding in this Pennsylvania bankruptcy court involving the former chapter 11 debtor, BWP, and various defendants concerning three exploration agreements regarding Oklahoma oil and gas wells.  Second, there is litigation (also involving HBA) now pending in the District Court of Oklahoma County, just remanded, involving two of the three agreements and against the same parties, and in which BWP has sought to amend its counterclaims to add parties and counts similar to those raised in this adversary proceeding.  Third, there is litigation pending in the Oklahoma state court involving the last two exploration agreements and many of the same parties (plus HBA), with BWP's motion to dismiss still pending.

I also note that the two lawsuits now pending in the Oklahoma state court both involve jury trial demands.  BWP did not demand a jury trial in this adversary proceeding, but it is likely—given the positions taken in the Oklahoma courts—that the defendants, who have not yet filed an answer, will demand trial by jury.[11]

C.

As noted above, just one month after filing its bankruptcy petition, on July 26, 2005,  BWP filed the above-captioned adversary proceeding in this forum and quickly

_____

[11]At oral argument on the instant motions, the parties so acknowledged.

thereafter an amended complaint, naming as defendants the three original state-court

plaintiffs, plus Mr. May and Mr. Hefner, both officers of GHK.  In its amended

complaint, BWP alleged facts surrounding all three Oklahoma exploration agreements.

Averring fraud and misrepresentation, BWP raised eight claims against some or all of the

defendants: intentional and constructive fraudulent transfers under state law, pursuant to

11 U.S.C. § 544; rescission due to fraud in connection with both exploration agreements

under state law; negligent misrepresentations under state law; conversion under state law;

unjust enrichment under state law; constructive trust under state law; equitable accounting

under state law; and turnover of interests in three oil and gas wells under 11 U.S.C. §

542.[12]

> The state-court plaintiffs then filed a motion to abstain or to remand BWP's

adversary proceeding filed in this court to state court.  Finding that the better exercise of

discretion was to abstain from hearing this proceeding, by Memorandum and Order dated

December 2, 2005, I granted the plaintiffs' request, transferring the adversary proceeding

to the Oklahoma state court.  BWP then appealed that order to the District Court of the

Eastern District of Pennsylvania, which court, by decision dated October 23, 2006, held

that the adversary proceeding could not be transferred to the Oklahoma state court.  The

district court ordered as follows: "The Bankruptcy Court for the Eastern District of

Pennsylvania's December 2, 2005 Order transferring the adversary proceeding (Bankr.

---

[12]For reasons previously detailed in a prior memorandum decision involving this adversary proceeding, I concluded that BWP was not asserting a true "turnover" claim under section 542 of the Bankruptcy Code.  See, e.g., Ches-Mont Utilities Const. Co. v. Willistown Woods Associates, 1992 WL 96335, at *2 (E.D. Pa. 1992).

17

Adv. No. 05-480) to the District Court of Oklahoma County is vacated and the

proceeding is remanded to the bankruptcy court to reconsider its options."

After my abstention decision, but prior to the district court's ruling on

appeal, on January 30, 2006, GHK (jointly with GHK LP) and Mr. Egolf filed proofs of

claim in the BWP bankruptcy case, both proofs asserting claims totaling $11.725

million.[13]  On March 1, 2006, BWP filed an objection to those claims, as well as 11

counterclaims.  Rather than BWP being in breach of the agreements, BWP asserted in its

counterclaims that the first two exploration agreements were subject to rescission for

fraud.  Id., at ¶ 32.  BWP also sought to avoid the loss of its interests in the other three

wells, contending that there was an April 5, 2005 transfer of interest that was avoidable as

a preference, a fraudulent conveyance, and/or an improper setoff.  It also sought a

declaration that it retained its interest in those three wells.

BWP's objection to the GHK proof of claim also included counterclaims

based on: Section 10(b) of the Exchange Act and SEC Rule 10b-5; Section 20(a) of the

Exchange Act; fraudulent transfers under state law; fraudulent inducement/rescission; and

negligent misrepresentation.  Id.  In sum, BWP sought expungement of GHK's claim,

rescission of the first two exploration agreements (and thus recovery of the $2.5 million

paid), setting aside of the transfer of its interests in the other three wells, restoration of its

interest in three wells, and damages including interest and costs.

---

[13]Mr. Egolf's proof of claim was identical to that jointly filed by the two GHK
entities.  I assumed for purposes of dismissal under section 1112(b) that both Egolf and GHK
could not recover from BWP.  Thus, I viewed the two claims as but one alleged liability of the
bankruptcy estate.

It appears that BWP seeks similar relief in the litigation pending in the
Oklahoma state court.  Conversely, in state court the GHK group is seeking certain stock
interests, retention of the funds paid by BWP and acknowledgment that they properly
terminated BWP's interest in the three Indian exploration oil and gas wells.  I further note
that the various claims raised by BWP and GHK essentially involve non-bankruptcy law:
Oklahoma state law or federal securities law.[14]

## II.

### A.

With their abstention motion now remanded to this court, the three
defendants again contend that the instant adversary proceeding is similar and/or related to
the litigation commenced in March 2004 in Oklahoma state court, which has since
evolved and is now pending as two lawsuits before the Oklahoma state court.  The
defendants in this adversary proceeding argue that the Oklahoma state court, which had
jurisdiction prior to this bankruptcy court, can and should resolve all of the issues
outstanding among the parties.  They also maintain that all eight claims raised by BWP in
its amended complaint, including the two that rely upon the Bankruptcy Code, are

---

[14]In my decision dismissing BWP's bankruptcy case, I concluded that, despite the
former debtor's creative efforts to insert them, there really are no actual bankruptcy law claims,
such as preference, fraudulent conveyance or setoff, against GHK.  I shall not repeat that analysis
here.

essentially based upon Oklahoma state law.  Moreover, the defendants strenuously argue

that BWP (as well as HBA and Endeavour) has been actively involved in "forum

shopping," conduct that the defendants assert should not be rewarded.

Accordingly, in the defendants' view, this proceeding is ripe for permissive

abstention under 28 U.S.C. § 1334(c)(1), resulting in dismissal.

The former debtor/plaintiff, BWP, counters that the litigation in this forum

is not identical to the litigation pending in the Oklahoma state court.  BWP emphasizes

that there are two "core" claims raised in this proceeding—turnover and fraudulent

conveyance—plus two additional defendants and issues involving three additional wells:

factors that render this proceeding sufficiently distinct from former state court litigation

brought in Oklahoma.  Moreover, BWP maintains that while defendant Hefner is a

resident of Oklahoma, defendant May is a resident of Colorado therefore it could not

obtain jurisdiction over him were this proceeding heard in Oklahoma.  Accordingly, BWP

argues that the adversary proceeding should be heard in this bankruptcy forum where all

of the claims involving all of the parties can be adjudicated.

Of course, some of these contentions assume that BWP's motion to amend

its counterclaims, which request now appears to be pending before the Oklahoma state

court, will not be granted.  I also note that the proposed amended counterclaims seek to

join Mr. May as a defendant, so presumably BWP believes it would be able to obtain

personal jurisdiction over him after all.  I further observe that the two pending state court

lawsuits—the one just remanded and the one commenced on June 21, 2006—involve all

three exploration agreements and all of the relief sought in this forum.  In other words,

were abstention granted, BWP has pending in Oklahoma state court all of the issues

posed in this proceeding.  Moreover, the Oklahoma state court could resolve all of the outstanding claims.


B.


I shall not repeat my prior analysis of the eight claims raised by BWP in this adversary proceeding.  In sum, and based upon the prior concessions of the parties, the jurisdictional classification of those eight claims raised by BWP in its amended complaint are as follows: count I for fraudulent conveyance under section 544, against GHK, LLC, GHK, LLP and Messrs Egolf and Hefner, is core; count II for fraudulent inducement and rescission under Oklahoma law, against GHK, LLC, GHK, LLP and Mr. Egolf, is non-core; count III for negligent misrepresentation under Oklahoma law, against all five defendants, is non-core; count IV for conversion under Oklahoma law, against all five defendants, is non-core; count V for unjust enrichment under Oklahoma law, against all five defendants, is non-core; count VI for turnover under section 542, against defendants GHK, LLC and GHK, LP, is core; count VII for constructive trust under Oklahoma law, against defendants GHK, LLC and GHK, LP, is non-core; and count VIII for equitable accounting under Oklahoma law, against defendants GHK, LLC and GHK, LP, is non-core.[15]

---

[15]In litigation involving multiple claims or parties, the various claims must be analyzed for bankruptcy jurisdictional purposes on a claim-by-claim basis.  Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999).

Also, as discussed in my prior abstention memorandum, both of the core claims, turnover and avoidance, incorporate Oklahoma law.  Thus, Oklahoma law clearly predominates in this proceeding.

Moreover, in deciding whether to abstain pursuant to 28 U.S.C, § 1334(c), I note at the outset that it is unlikely that denial of defendants' abstention motion will result in any trial in this bankruptcy forum.  If a party demands a jury trial to determine a non-core proceeding, and if all parties do not consent to the entry of a final judgment in bankruptcy court, then the bankruptcy court may not hear the matter because the Seventh Amendment precludes de novo review of a jury verdict in the district court.  See Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir. 1990) ("By the Seventh Amendment, any fact found by a jury cannot be reviewed de novo.  Accordingly, a bankruptcy court cannot conduct a jury trial in a non-core proceeding.")

Given the numerous non-core claims raised, and the predomination of state law, were this adversary proceeding to remain in this Eastern Pennsylvania federal district, the district court would have to preside over the jury trial and the reference would be withdrawn from the bankruptcy court.  Id., at 447 (directing the district court "to withdraw the reference of this adversary proceeding and to conduct a jury trial").  All parties agree that GHK is likely to demand trial by jury and would not consent to an adjudication in this bankruptcy forum.

C.

There are two types of abstention available to bankruptcy courts when an adversary proceeding is filed.  Mandatory abstention is provided by 28 U.S.C. § 1334(c)(2), which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Under the terms of this statute, the moving party bears the burden of persuasion, see In re Ascher, 128 B.R. 639, 644 (Bankr. N.D. Ill. 1991), to demonstrate the following elements: a timely motion to abstain; a proceeding based upon state law claims, with these claims being classified as non-core; no basis for federal court jurisdiction except for 28 U.S.C. § 1334; an appropriate civil action has been commenced in state court; and the likelihood that the pending state court action can be timely adjudicated.  See, e.g., In re Titan Energy, Inc., 837 F.2d 325, 333 n.14 (8th Cir. 1988); Barge v. Western Southern Life Ins. Co., 307 B.R. 541, 546 (S.D. W. Va. 2004); In re Pacor, Inc., 72 B.R. 927, 931 (Bankr. E.D. Pa. 1987), aff'd and recommendation approved, 86 B.R. 808 (E.D. Pa. 1987), appeal dismissed, No. 87-1408 (3d Cir. Jan. 27, 1988).

Previously, the defendants sought to meet their burden to demonstrate that these non-core claims could be timely adjudicated in state court, see generally J.D.

23

Marshall Int'l, Inc. v. Redstart, Inc., 74 B.R. 651, 654 (N.D. Ill. 1987); In re Midgard

Corp., 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997), by offering a declaration from the

Honorable Noma Gurich from the District Court of Oklahoma County, who presided over

the state court litigation prior to its removal.  Judge Gurich then declared that, were the

litigation returned to state court and the parties "agreeable and otherwise prepared for

trial," a jury trial on all the claims could be conducted within 60 to 90 days from the final

pretrial conference.  Defendants' Ex. Q.

Since that declaration, all Oklahoma district court litigation has been

remanded to state court and a second state court lawsuit has been filed.  Previously, I

concluded that the application of mandatory abstention is problematic.  I still do.

To the extent that the state court trial schedule depends upon both parties

notifying the court that they are fully prepared and ready for trial, as mentioned in Judge

Gurich's declaration, I cannot readily conclude, given the parties' extensive procedural

maneuvering, motions and discovery disputes, that they will so notify the state court in a

timely manner.  And the defendants offered no evidence concerning local state practice

for the resolution of disputes, where one party asserts that it needs more time to prepare

for trial.

Accordingly, I cannot conclude that the defendants met their evidentiary

burden to demonstrate that abstention would yield a timely disposition of this litigation in

state court.  See, e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. 634, 644 (E.D. Pa.

2005); Borne v. New Orleans Health Care, Inc., 116 B.R. 487, 494 (E.D. La. 1990); In re

Nationwide Roofing & Sheet Metal, Inc., 130 B.R. 768, 779 (Bankr. S.D. Ohio 1991).  I

thus again turn to discretionary abstention under 28 U.S.C. § 1334(c)(1).

24

D.

Subsection (c)(1) of section 1334 states: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

As I explained in my prior ruling, the non-specific language of the statute, its evolution, and the paucity of legislative history has resulted in somewhat differing approaches toward permissive abstention of bankruptcy proceedings. See generally Block-Lieb, Permissive Bankruptcy Abstention, 76 Wash. U. L.Q. 781 (Fall, 1998).[16] One circuit court though has made general observations, in dicta, that section 1334(c)(1) affords "broad power to abstain whenever appropriate" and that "[t]he abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." Matter of Wood, 825 F.2d 90, 93 (5th Cir. 1987).

In this district, the consensus position involves consideration of a non-exclusive list of factors:

> The following criteria guide the discretionary decision to abstain: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of

---

[16]A court of appeals has no jurisdiction to review the application of discretionary abstention. See 28 U.S.C. § 1334(d); In re Federal-Mogul Global, Inc., 300 F.3d 368, 389 n.14 (3d Cir. 2002). Thus, there can be no circuit court-mandated approach.

related non-bankruptcy proceedings; (5) the basis of the
bankruptcy court's jurisdiction over the claim; (6) the degree
of relatedness or remoteness of the proceeding to the main
bankruptcy case; (7) the substance rather than form of an
asserted "core" proceeding; (8) the feasibility of severing state
law claims from core bankruptcy matters to allow judgments
to be entered in state court with enforcement left to the
bankruptcy court; (9) the burden on the bankruptcy court's
docket; (10) the likelihood that the commencement of the
claim in bankruptcy court involves forum shopping; (11) the
existence of the right to a jury trial; and (12) the presence in
the proceeding of nondebtor parties.

Gilbert v. Ben Franklin Hotel Associates, 1995 WL 598997, at *1 (E.D. Pa. 1995); see

e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. at 645; In re Asousa Partnership, 276

B.R. 55, 74-75 (Bankr. E.D. Pa. 2002); see also Bricker v. Martin, 348 B.R. 28, 34 (W.D.

Pa. 2006); Civic Center Cleaning Co. v. Reginella Corp., 140 B.R. 374, 375-76 (W.D. Pa.

1992); In re Laroche Industries, Inc., 312 B.R. 249, 253-54 (Bankr. D. Del. 2004); 1

Norton Bankr. Law & Practice 2d, § 4:39 (2004).

        "Courts should apply these factors flexibly, for their relevance and

importance will vary with the particular circumstances of each case, and no one factor is

necessarily determinative." Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6

F.3d 1184, 1189 (7th Cir. 1993). Furthermore, whether permissive abstention is

appropriate is committed to bankruptcy court discretion. See, e.g., Civic Center Cleaning

Co., Inc. v. Reginella Corp., 140 B.R. at 375; In re Asousa Partnership, 276 B.R. at 75.

Moreover, core claims as well as non-core claims are subject to permissive abstention.

See, e.g., In re Best Reception Systems, Inc., 220 B.R. 932, 952 (Bankr. E.D. Tenn.

1998).

        I now consider each of the twelve factors that comprise, in general, the

permissive abstention matrix, using the order listed in Gilbert:

26

### (1) the effect on the efficient administration of the bankruptcy estate

Given that BWP's bankruptcy case is presently dismissed, this adversary proceeding has no effect on the administration of the bankruptcy estate.  But even prior to dismissal, abstention would not have had a detrimental effect on the administration of this chapter 11 case.

The outcome of this chapter 11 reorganization would have been defined solely by the success or failure of BWP's claims against GHK.  In the memorandum accompanying the dismissal order, I explained that if BWP were successful in its claims against GHK it did not need to reorganize, and if it were unsuccessful it could not reorganize.  If BWP were successful, it could repay relatively few creditors in cash from its recovery from GHK.  And if it were not, GHK likely could veto any chapter 11 liquidation plan.

Furthermore, were abstention denied, any jury trial in this proceeding would take place in the District Court for the Eastern District of Pennsylvania.  Were abstention granted, jury trial would take place in the Oklahoma state court.  There is no basis to conclude that the chapter 11 case, had it not been dismissed, would have been more efficiently administered if the parties litigated in a non-bankruptcy forum in Pennsylvania versus Oklahoma.[17]

---

[17]When considering mandatory abstention under section 1334(c)(2), I noted that there was an absence of evidence regarding the timely disposition of the litigation in state court: an issue upon which the defendants had the burden of persuasion.  The absence of evidence does not lead me to conclude, however, for purposes of permissive abstention, that a state court adjudication would be measurably slower than trial on these issues in the federal district court.

### (2) the extent to which state law issues predominate over bankruptcy issues

In this proceeding, state law dominates all of the claims, even the ones classified as core. The relevant state law concerns contractual exploration agreements involving ownership interests in Oklahoma oil and gas wells, a subject probably better known to Oklahoma state court judges than to me, as well as Oklahoma common law fraud and misrepresentation issues.

### (3) the difficulty or unsettled nature of the applicable law

From the pleadings submitted, I cannot conclude that the applicable non-bankruptcy law would be difficult to apply or is unsettled. There was no evidence on that point.

### (4) the presence of related non-bankruptcy proceedings

As is apparent from the lengthy description of events in Oklahoma courts, there are two lawsuits presently pending involving the same or similar issues and parties. The lawsuit just remanded from the Oklahoma federal court to the Oklahoma state court began long before this adversary proceeding commenced; and the non-remanded state court lawsuit is but an amendment to a lawsuit also commenced long before this bankruptcy case began. Moreover, certain discovery disputes have already been resolved by the state court. Comity concerns favor abstention.

### (5) the basis of the bankruptcy court's jurisdiction over the claim

The majority of the claims in this adversary proceeding are non-core, thus supporting abstention.

**(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case**

As just noted above, given BWP's assets and liabilities, this proceeding involving its oil and gas interests was the de facto bankruptcy case.

**(7) the substance rather than form of an asserted "core" proceeding**

In substance, even the core claims in this proceeding incorporate relevant non-bankruptcy law.

**(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

Given the incorporation of state law into the two core claims, it would be infeasible to sever the non-core claims.  One forum should determine all of the claims.

**(9) the burden on the bankruptcy court's docket**

It would not be a burden to adjudicate this proceeding in this court because, in light of the likely jury demand, it would be tried in the district court.

**(10) the likelihood that the commencement of the claim in bankruptcy court involves forum shopping**

Given BWP's few tangible assets and the timing of this bankruptcy filing in relation to rulings from the state and district courts of Oklahoma and the scheduled BWP

deposition, I agree with the defendants that there is a likelihood that forum shopping

played a significant part in BWP's chapter 11 filings in this district.[18]

### (11) the existence of the right to a jury trial

There is likely to be a jury demand by the defendants; moreover, given their

past opposition to adjudication in any bankruptcy court, the defendants are unlikely to

consent to my presiding over that trial, thus necessitating withdrawal of the reference by

the district court.  See, e.g., Beard v. Braunstein.

### (12) the presence in the proceeding of nondebtor parties

A non-debtor party, HBA, is involved in the litigation pending elsewhere,

and NANG may also become a party, thus suggesting that more complete relief could

occur in the Oklahoma forum.

---

[18]The bankruptcy filing occurred more than one year after the debtor was sued in Oklahoma, thus the existence of that lawsuit was not likely the triggering event for this chapter 11 petition.  The bankruptcy was filed after the district court first remanded the matter to state court, after the state court issued various rulings, and one day before BWP's deposition was to occur.  The debtor averred in Oklahoma pleadings that its principal place of business was in Texas, not Pennsylvania.  The only tangible property scheduled by BWP, other than its purported interests in the four Oklahoma oil and gas wells, is a bank account in the amount of $9,248.00.  This bankruptcy filing does not appear to have been undertaken to protect assets from execution, nor even to reduce the costs of litigation.  Presumably, those costs would be the same whichever forum determines the debtor's claims against GHK.  The history of the various lawsuits shows repeated efforts to avoid litigating in Oklahoma state court.  And, for reasons discussed in the memorandum accompanying the dismissal order, there are no substantive rights provided by federal bankruptcy law that would materially enhance BWP's chance of success in its litigation with GHK.

In opposing dismissal, BWP argued that its bankruptcy filing in June 2005 was triggered by GHK's April 2005 letter terminating the former's rights under the Indian exploration agreement and the desire to take advantage of the 90-day reachback provisions of the bankruptcy preference statute.  However, BWP raised no preference claim in this adversary proceeding.  Preference was only mentioned on March 1, 2006—in its objection to GHK's proof of claim—seven months after this adversary proceeding was filed.

In sum, BWP is an entity with no employees and virtually no assets beyond those at issue in this proceeding. Those disputed assets involve oil and gas wells in Oklahoma and arise from contracts entered into in Oklahoma. If BWP were to prevail and recover $2.5 million from GHK, and if it were to retain its interest in the Indian exploration agreement, it would have no need to reorganize. It could repay its debts in full in cash. And if it were unsuccessful, it would have insufficient assets (even with the proposed modest infusion of cash, as discussed in the earlier dismissal memorandum) with which to reorganize over GHK's virtually certain opposition.

BWP has stated elsewhere that it is a Delaware limited liability company, principally doing business in Texas, with an office in Bala Cynwyd. Its managing partner works out of Arkansas. It appears to have filed this bankruptcy as a tactic to avoid litigation in the state court of Oklahoma. The claims involved in this adversary proceeding are almost entirely Oklahoma state law issues. Any adjudication of this dispute in this federal district would occur in the district court, not in this bankruptcy court. And there are pending two related lawsuits in Oklahoma state court, with at least one (if not both) originating prior to its bankruptcy filing, involving more parties and with the same issues as posed in this proceeding.[19]

Accordingly, I conclude that it is the better exercise of discretion to permissively abstain from all of BWP's claims against all the defendants, pursuant to 28 U.S.C. § 1334(c)(1).

---

[19]In my previous ruling, I was concerned that BWP might have statute of limitations problems with some of its claims if this proceeding were dismissed. In light of its pending motion to amend its counterclaims, and in light of GHK's amended petition in state court, those limitations concerns may not exist. And if they do, they would not outweigh the numerous factors supporting abstention and dismissal.

Furthermore, when a bankruptcy court concludes that abstention is the appropriate remedy, the proceeding typically will be dismissed, albeit without prejudice. See, e.g., In re North Lily Mining Co., 289 B.R. 1 (Bankr. D. Colo. 2002); In re 610 W. 142 Owners Corp., 1999 WL 294995, at *4 (S.D.N.Y. 1999); In re Nutri/System, 1993 WL 525668, at *7 (Bankr. E.D. Pa. 1993); In re Mid-City Ventures, 1992 WL 37481, at *6 (Bankr. W.D. Tenn. 1992); see also Barbee v. Colonial Healthcare Center, Inc., 2004 WL 609394 (N.D. Tex. 2004); see generally In re Lorax Corp., 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003) ("The usual procedural device employed to 'abstain' is to dismiss the matter pending before the federal tribunal, so that a parallel matter can proceed in an alternate forum."). Given the instruction from the district court that the transfer of this adversary proceeding is impermissible, I conclude that dismissal without prejudice is the appropriate exercise of discretion.[20]

An appropriate order shall be entered.

---

[20]A number of factors should be considered when a bankruptcy court considers retention of jurisdiction over an adversary proceeding after dismissal of the main bankruptcy case: judicial economy; convenience to the parties; fairness; comity; and the degree of difficulty of the legal issues involved. See, e.g., In re Millenium Seacarriers, Inc., 458 F.3d 92, 96 (2d Cir. 2006); In re Smith, 866 F.2d 576, 580 (3d Cir. 1989). Based upon the facts and circumstances discussed above, it also would be inappropriate to retain jurisdiction over this proceeding after dismissal of BWP's chapter 11 bankruptcy case.

32

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :        Chapter 11

BWP GAS, LLC                                 :

                    Debtor                   :        Bankruptcy No. 05-18754bif

_____

BWP GAS, LLC                                 :

                    Plaintiff                :
            v.
                                             :

THE GHK COMPANY, LLC,
GHK/POTATO HILLS, L.P.,                      :
BRIAN F. EGOLF, ROBERT S. MAY, and
ROBERT HEFNER                                :        Adversary No. 05-0480

                    Defendants               :

..................................................

ORDER

..................................................

AND NOW, this 14th day of February 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered that this court abstains from

determining this proceeding, pursuant to 28 U.S.C. § 1334(c)(1), and the proceeding is

dismissed without prejudice.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Reid E. Robison, Esq.
John D. Stiner, Esq.
McAfee & Taft
Two Leadership Square, 10th Floor
211 North Robinson
Oklahoma City, OK 73102

Howard Gershman, Esq.
Flamm Boroff & Bacine, P.C.
794 Penllyn-Blue Bell Pike
Blue Bell, PA 19422

Allen B. Dubroff, Esq.
Jaffe, Friedman, Schuman, Nemeroff,
Applebaum & McCaffery, P.C.
7848 Old York Road, Suite 200
Elkins Park, PA 19027

Michael V. Blumenthal, Esq.
Brown Raysman Millstein
Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022